JOHN H. McNEELY v. COMMISSIONERS OF MORGANTON.

(Decided December 5, 1899.)

*Mandamus—Local Option—Act 1895 (Private Acts), Chap. 158.*

1. The local option law for Morganton (Private Acts, chap. 158) authorizes the Commissioners to grant license for sale of liquor, provided a majority voted for license; if the vote is a tie vote, the Commissioners have not the authority.

2. While the act provided that no election for the purpose should be within less than two years of the last previous election, on the first Monday in May, the day named (first Monday in May) fixes the time of the election, being the same day of election of municipal officers.

3. The act requires no separate registration of voters for such election.

CIVIL ACTION for mandamus to the defendants commanding them to hear the application of plaintiff and to grant to him license to retail spirituous liquors in Morganton, heard before *Allen, J.,* at CHAMBERS in Morganton, on 22nd July, 1899. The mandamus was refused. Plaintiff excepted and appealed.

The circumstances are fully stated in the opinion.

*Messrs. S. J. Ervin,* and *J. T. Perkins,* for appellant.
*Messrs. Avery & Avery,* and *Avery* and *Ervin,* for appellee.

FURCHES, J. By various acts of the Legislature and the vote of the town of Morganton, it had been a "dry" town for twenty years or more, that is, the right to issue license to retail spirituous liquors by the small measure had been prohibited. This being the "status," when the Legislature of 1895 (chap. 158), passed and ratified an act authorizing an

election to be held on the first Monday in May, 1895, at which election it should be determined whether license should be granted for the sale of liquor by the small measure or not; that if a *majority* voted for licenses, they should be granted.

The act further provided that upon petition of one-third of the qualified voters of the town, it should be the duty of the Commissioners to order another election on the first Monday in May, provided that no election so ordered should be within less than two years of the last previous election.

The provisions of the Act of 1895 providing for said elections are as follows:

"SECTION 3. If at said election on the first Monday in May, 1895, or at any such subsequent election as herein provided, a majority of the votes cast shall have written or printed upon them the word 'license,' then spirituous, vinous and malt liquors may be sold within the corporate limits of Morganton."

At the election held on the first Monday in May, 1895, a majority of votes cast was for license. And in pursuance of the result of this election, the plaintiff was granted a license to retail liquor by the small measure in the town of Morganton.

In 1897, upon the petition of the requisite number of voters, the Commissioners ordered another election on the first Monday in May of that year, when a majority of the votes cast were for license, and the plaintiff was again granted license to retail liquor in Morganton.

In 1899, upon the petition of the required number of the qualified voters of the town, the Commissioners ordered another election to be held on the first Monday in May, 1899, and upon a count of the votes cast it was found that 151 votes had been cast for license and 151 votes had been cast against license. And this vote was so recorded and declared, show-

ing that the "wets", or those in favor of license, *had not* received a majority of the votes cast. The plaintiff, considering that he was entitled to license under this election, applied to the Commissioners and complied with all the requirements which would entitle him to a license, if the Commissioners were authorized to grant it under said election. But the Commissioners, believing they were not so authorized, refused to grant the plaintiff license, stating that they refused to issue the license solely upon the ground that they had no authority to do so, there not being a majority of the votes at said election on the first Monday in May, 1899, in favor of license.

Upon the refusal of the Commissioners to grant the license, the plaintiff commenced this action in the Superior Court of Burke County to compel them to issue it, and asked for a writ of mandamus. Upon this writ being denied and the plaintiff and his surety on the prosecution bond being adjudged to pay the costs, the plaintiff appealed to this Court.

While this case presents an interesting and somewhat novel question, yet we do not think it a difficult one. The plaintiff's contention is that the town was "wet" on the first Monday in May, 1899, (date of the last election), and that it required a majority of the votes cast to change the "status." That being so, and there not being a majority *against* license, it was the duty of the Commissioners to grant the license. This argument is plausible, but not sound.

We must remember that when the Act of 1895 was passed, the town of Morganton was "dry." This is the status we start with, and it can not be contended that, had the election in 1895 resulted as the election in 1899 did, that the Commissioners would have been authorized to issue license; for the reason that the act only authorizes them to do so if a *majority* vote for license. And the act provides for a resub-

mission of this question every two years if one-third of the qualified voters petition the Commissioners to that effect; and that "if at said election on the first Monday in May, 1895, or any subsequent election *as herein provided, a majority of the votes cast shall have written or printed upon them the word 'license,'* then spirituous, vinous or malt liquors may be sold within the corporate limits of Morganton."

It seems to us that this is plain language, showing that the result of one election only authorizes the issuance of licenses until the next election, and that the "status" at the subsequent election is just the same it was at the first election; and that it requires a *majority* of the votes cast at each election to authorize the Commissioners to grant license.

Suppose, instead of the Legislature authorizing one-third of the voters of Morganton to require an election to be held every two years, it had said that there shall be an election on the first Monday in May, 1895, and on the first Monday in May every two years thereafter, and if at said elections a majority of the qualified voters vote for license, the Commissioners shall grant license; but if a majority do not vote for license at said elections, they shall not grant license. An election is had, and at the first election a majority vote for license, but at the second election there is not a majority for license—there is a "tie." Could it be contended that the Commissioners would have the right to issue license? We see no difference in the fact that one-third of the voters had the right to require the election to be held every two years and the Legislature ordering it to be held every two years. It required a *majority* of the votes cast in either event to authorize the Commissioners to act. This majority, "license" did not get; and the judgment must be affirmed.

There were two other grounds presented and argued, but neither of them is tenable. One is, that the first Monday in

May, 1899, came two days earlier in the month than it did in 1897, and therefore it lacked two days of being two years from the date of the election in 1897 until the election was held in 1899. But the act provided for the election to be held on the first Monday in May—the same day of election for municipal officers. We think this controls the time. It is like electing members of the Legislature every two years—elections to be held on the first Tuesday in November, which may not be precisely two years, if we count the days. In fact the Legislature has changed the time of this election from November to August, and, if the plaintiff's contention should be sustained, it would invalidate that election. The other is that there was not sufficient time given of this election for the voters to register. But we see no provision for a separate registration of voters for this election. It is to be held at the same time and place that the election is held to elect the town officers, and all persons qualified to vote in one election are qualified to vote in the other. And it is not claimed but what legal notice was given of this election, and that the legal time required for registration was complied with. This being so, in the absence of any suggestion of fraud, unfair practice or injury to the plaintiff, we can not invalidate this election on that account. *Quinn v. Lattimore*, 120 N. C., 426; *Railroad v. Commissioners*, 116 N. C., 563; *McDonald v. Morrow*, 119 N. C., 666; *Harkins v. Cathey, Ibid*, 649.

Upon a contested election, upon allegations of fraud such irregularities (if there were such) might be offered and considered as evidence tending to sustain such allegations. *Howard v. Turner*, at this term. The judgment must be
    Affirmed.