KERN v. BOARD OF SUPERVISORS OF ST. CLAIR COUNTY.

1. INTOXICATING LIQUORS — LOCAL OPTION — CONCLUSIVENESS OF PETITION TO SUBMIT—STATUTES.

Mandamus does not lie against a board of supervisors who have refused to determine the genuineness or fraudulent character of signatures to a petition for the submission of the question of adopting prohibition, to compel them to consider the issues of fact involved in the qualifications of the petitioners, or the genuineness of their signatures, and the affidavit required to be annexed to the petition is conclusive of such issues. 2 Comp. Laws, §§ 5414–5417. Act No. 183, Pub. Acts 1899.

2. SAME—PETITION—WITHDRAWAL OR REMOVAL OF NAMES.

A petitioner may not have his name removed after the petition is filed, when the signature was genuine and voluntary.

3. SAME — MANDAMUS — ADJOURNMENT OF BOARD OF SUPERVISORS.

In a proceeding for review by certiorari of a denial by the circuit court of mandamus to require the board of supervisors to determine such issues of fact, the Supreme Court will order the issuance of a writ to compel the board which adjourned *sine die* without determining to submit the question to a vote, to reconvene and pass on the petition.

Certiorari to St. Clair; Erskine, J., presiding. Submitted January 11, 1910. (Calendar No. 23,726.) Reargued February 7, 1910. Decided February 11, 1910.

Mandamus by Christian Kern to compel the board of supervisors of St. Clair county to investigate the sufficiency of petitions asking for the submission to the vote of the people on the question of prohibiting the manufacture and sale of intoxicating liquors. An order denying the writ is reviewed by relator on writ of certiorari. Affirmed.

*John B. McIlwain* and *Joseph Walsh*, for relator.

*F. B. Brown*, Prosecuting Attorney, for respondents.

Hooker, J. Proceedings under the local-option law had reached the stage where a committee of the board of supervisors, to which the matter had been referred, reported that it had counted the names on the petitions and found 4,402 names, and had found from the records of the last preceding general election that the vote for governor was 11,794, being the largest number of votes cast for any person at said election. This report also stated that the committee had been advised by the prosecuting attorney that the committee had no power to inquire into the legality of the petitions or to determine whether the names thereon were those of legal resident voters in the county. A member of the board offered a resolution of determination and declaration of the sufficiency of the petition, and ordering and directing an election as prayed. Before a vote was reached, an order to show cause was served upon them, and the matter was heard upon a return before the circuit court, where the mandamus prayed was denied, and the case is before us by certiorari. The petition prayed a command that the board:

(*a*) Investigate whether said petitions have been posted as required by statute.

(*b*) Examine all petitions, and ascertain whether the names have been placed thereon by the respective persons whose names appear.

(*c*) Examine into the question whether the signers were qualified electors of the several and respective townships and wards alleged.

We understand that the board was ready and intended to proceed and determine the question of the adoption of the resolution, when restrained by the circuit court order. It would seem, therefore, that no mandamus is necessary to command that. What relator asked and claims to have been denied appears to be that the board "investigate and determine whether the several petitions filed before it were in fact signed by the requisite number of qualified electors, and whether the petitions had been properly posted, and to permit relator to offer proof in re-

spect thereto." This does not seem to be entirely accurate, for we infer from relator's brief that the board recognized the requirement that they examine and decide all of those questions, but maintained that the affidavits and records filed were conclusive upon such questions, and that they were not open to the production of proof by interested parties, or to any sort of an inquiry judicial in its nature when such persons could offer testimony on the subjects, and be heard or represented by counsel.

The sections of the local-option law involved in this case are found from 5414 to 5417, inclusive, of the Compiled Laws, as amended by Act No. 183, Pub. Acts 1899. The design of the act is to provide a means and prescribe the method by which counties can have a prohibitory liquor law substituted for the general liquor law within their respective confines. It provides (1) the requirements necessary to get the county clerk to call a meeting of the board; (2) the requirements justifying actions by the board. It was necessary that petitions duly verified asking submission be seasonably posted and presented to the clerk with sworn proof of posting. It was necessary that petitions be signed by not less than one-third of the qualified electors of the county. We are of the opinion that a clerk might lawfully refuse to report the proceeding to the board in a case where the petition on its face fails to comply with the requirements of the law, and, if mistaken in his refusal, no doubt a writ of mandamus would compel action. Moreover, we have no doubt that it would be proper to investigate the question of whether one-third of the electors had signed before reporting to the board, but such investigation would have to be confined to ascertaining from a comparison of the number of names on the petition with the number on the records mentioned in the statute whether the petition contained such number of electors; the affidavit attached to the petition being conclusive of the number and qualifications of the persons signing and the poll list or canvass of votes conclusive of the number required, for the law thus limits the inquiry. The law

does not give him the authority to remove names or add names, nor does it permit him to hear proof and determine the actual status of the signer, nor can he investigate any question of fraudulent signing. He must be governed by the affidavit as to the posting. In short, this section prescribes the tests that he may apply in determining his duty in the premises. See sections 3, 5, Act No. 183, Pub. Acts 1899. Having reported to the board and filed the required documents, it devolves upon the board to review the clerk's action, and finally determine from the face of the papers and records whether the requirements of the law have been complied with. Having determined this, they have no discretion. If they find that the law has been complied with, they must call the election.

How are they to determine this? The law points out specifically how, just as it does in the case of the clerk. Section 5417 says:

"When upon examination it shall appear to the said board, *upon the face of said petitions, and by the transcripts of the poll lists, or by reference to the returns and canvass of the last general election, that such submission of said question has been prayed for by the requisite number of electors, as hereinbefore provided, they shall, by resolution, determine,*" etc.

Where do we find the authority to change the test by the addition of the words,

"And shall find by extrinsic proof that none of such names is the name of one not an elector and that there was no omission to post any or all of said notices, and that none of the persons whose names appear has died or removed and that there have been no names fraudulently signed?"

It is suggested that the affidavits of genuineness of signatures, and of posting the required notices, are only *prima facie* evidence of those facts. Grant that it would not be conclusive in courts of justice in some cases, is it merely *prima facie* evidence? It is certainly substantial evidence whether perjury could be predicated upon such af-

fidavits or not (3 Comp. Laws, § 11306)—a question we do not discuss—and in our judgment it was entirely competent for the legislature to make it conclusive evidence of the facts required, if thought advisable. They evidently did think it advisable for that is what was said.

We must not lose sight of the object of this law. It was to take the sense of the community as to the application of one or another law relating to the sale of liquor, not in the interest of individuals, but of the public. There was an evident intention to avoid expense and disturbance of existing conditions lightly, and the legislature made certain requirements a preliminary to action. It might have fixed this or any of many other methods of testing the desire for an election, and might have gone to great lengths in ascertaining it with certainty. It might have omitted this test altogether, or it might, as it did, provide an *easy* and inexpensive and expeditious *method* of ascertaining, with a *reasonable degree* of certainty, how general such a desire is, without submitting the matter to a sort of judicial inquiry before the board or courts of justice to ascertain whether there was a technical want of compliance or a fraudulent attempt to secure action, of neither of which was there any great probability. We consider this a ministerial matter from beginning to end. The legislature carefully pointed out the procedure, and to our minds as plainly indicated an intent that it should not be subjected to the delays and obstacles that might be devised by persons interested in preventing a vote upon the question. Where the very worst that can happen is the taking a vote of the people upon a question of general interest, there is no serious objection to legislative action providing for a somewhat summary means of ascertaining the desire for such vote. It may be that fraudulent and careless practices may interfere with the satisfactory working of this law, but we do not anticipate such result. In that case, further legislation will take care of it.

It is strenuously urged that one desiring to have his name removed from a petition should be permitted to do

so. We have not passed on that question further than to say that he could not have his name removed after the petition had been filed when his signature was genuine and voluntary. It is also insisted that, where a name has been fraudulently signed or procured, there *must* be some way of correcting the fraud, and that necessarily the board of supervisors must have that power, because it is lodged nowhere else. Section 4 (2 Comp. Laws, § 5415) of the act provides that, to enable electors to ascertain whether their names have been fraudulently signed, the petitions must be posted, and this is relied on as the ground for the argument that the board must have the power asserted. In our opinion the conclusion is not justified by this language: (1) Because information to the elector may be intended for another purpose, and with a view to other action than a vindication of the elector before the board, which might be an idle ceremony, for the reason that it could not affect their determination, and could subserve no other purpose. Such posting does furnish an opportunity to make public the fraud, whether prosecution for perjury or libel could follow or not, and would also naturally deter those making and filing petitions from any extensive signing of names fraudulently. (2) The conclusion is in direct opposition of the mandatory provision that the board shall examine, and determine from, the face of the petitions and records, and that the decision shall be final. The fact that signatures are genuine and the signers electors was evidently intended to be established by the affidavit attached to the petition, which the publicity afforded by posting, and the dangers of prosecution for perjury if false, and the right of personal action would be likely to sufficiently protect both the public and the electors against fraudulent practices. In an unreported case, decided in 1903, Calendar No. 19,792, some of the questions before us were considered and decided. See *Case* v. *Board of Sup'rs of Benzie Co.* The board had considered and denied the petitions for submission. The following questions appear to have been involved and

were decided by the circuit judge. The decision sufficiently indicates the questions. He held:

(1) That the affidavits required by statute were regular in form.

(2) "That the board * * * have nothing to do with the names of voters appearing on the poll book * * * for *any purpose, except* to ascertain the number of votes cast in said county," etc.

(3) That "it is the duty of the board * * * to recognize and count all names on said petition who have signed said petition as legal petitioners, whether such names appear on the poll books * * * or not."

This holding appears to be sustained by the case of *Werstein* v. *Board of Sup'rs of Calhoun Co.*, 156 Mich. 63 (120 N. W. 354).

(4) That "the *board in acting upon and considering said petition cannot go behind the affidavits attached to the petition.*"

(5) That, "if upon the face of the petitions it appears that said petitions are signed by as many electors. * * * as one-third of the whole number of votes cast, * * * it was the duty of the board to submit the question."

A mandamus was issued requiring the board to reconvene and take the necessary steps for the submission of the proposition to a vote of the electors of the county. This *court affirmed the order on certiorari, without filing* an opinion. The question of the finality of the board's action seems not to have been considered. This decision appears to have covered the questions raised in the present case, and adjudicated that it is the affidavit that conclusively settles the facts of the genuineness of the signature and the qualifications of the signer, and that the board is bound to act when the papers are regular upon the face and show by a comparison the proportionate number required by law upon the petition.

The order is affirmed.

At the reargument heard after the foregoing was written, it appeared, and was conceded to be true, that the

board of supervisors had, after authorizing a return to the order in this cause, adjourned *sine die*. We are surprised at this, but must assume that such action was not a deliberate disregard of a plain duty, but under the mistaken notion that the matter could be considered at a special session, should occasion require. We are therefore constrained to grant the writ of mandamus to issue from this court, commanding the members of said board to reconvene in continuance of the regular session and proceed to examine and determine the question raised by said petitions, according to the rules indicated by this opinion, and thereupon make such order as the law requires.

Writ granted.

MONTGOMERY, C. J., and MOORE, BLAIR, and STONE, JJ., concurred.

OSTRANDER, J. That more than one construction may be given to Act No. 207 of the Public Acts of 1889 (2 Comp. Laws, §§ 5412–5435), as amended by Act No. 183 of the Public Acts of 1899, will be apparent to any one who will read the two enactments. The language employed supports a construction which will in practice render the law utterly futile. It supports a construction which devolves upon boards of supervisors the duty to take testimony and to decide the innumerable issues of fact which may be presented upon the sufficiency of petitions, the right of petitioners to withdraw, and the alleged fraudulent conduct of interested persons. No construction of the law is possible which does not appear to do violence to some of the language employed by the legislature. Clearly the work of construction is not to be entered upon by the court without caution, and not to be concluded without the reflection which the importance of the subject demands. We must, if we can, so construe the law as to make it effectual. In my opinion it may be so, and reasonably so, construed. The purpose of the law is clear. It is to permit the electors of particular localities to suspend in those localities the operation of the general liquor laws. Such a change can

be brought about only by the votes of a majority of qualified electors. Such a vote may be had only after certain preliminary steps have been taken, steps designed to secure an expression of the sentiment of the community. It is about these preliminary steps that the courts have been asked to give directions. In most cases they have been asked to do this after the steps had been taken, and of necessity the questions presented by the record and no others have been determined. In this case the steps, so far as action of the board of supervisors is concerned, have not been taken.

The board of supervisors, the facts permitting such action, is required to determine and to express the determination in the form of a resolution, and later in the form of an order, that submission of the question has been prayed for by the requisite number of electors. The question most frequently presented and the one presented in this case is: Upon what showing or record shall the board base the required action? The statute does not expressly provide for any showing or evidence, except the petitions and either the poll lists or returns and canvass of votes of the last general election. No power is given to the board to examine anything else. The board has no general power in the premises. What does an examination of the petitions involve? The statute says it involves an examination of what appears upon the face of said petitions. They should indicate, of course the purpose or the prayer of the persons signing. They must have attached, or there must accompany them, as a part of them, affidavits. The affidavits must set out certain facts. Here is the statute evidence from which the board must ascertain how many persons have prayed for the submission of the question to a vote of electors. In this view the duty is a ministerial one, performed in a summary manner. To go further, to frame issues of fact, to receive and consider testimony would not only be to travel beyond the statute bounds, but it would invite, and probably would result in, such delays as to defeat the purpose

of the law. A construction should not be given to the act which would permit such a course to be pursued unless it is imperatively required; because, if the right to exercise judicial power is given by the act to the boards of supervisors, that alone is sufficient to condemn the law. The poll lists, or, in their absence, the returns and canvass of votes of the last general election, are required for a single purpose. That is to show the total number of qualified electors at the preceding election.

The construction indicated does violence, it is said, to the provision of the law which reads:

"To enable each and every elector to determine for himself if his name has been fraudulently attached to said petition, it is hereby required  *  *  *  that an exact copy of said petition and of all the signatures thereto shall be posted in three of the most conspicuous places in the said township, ward or election district for at least ten days immediately prior to its presentation to the county clerk." 2 Comp. Laws, § 5415.

If this provision cannot be harmonized with the one which makes the face of the petitions the evidence upon which the board must act, it is still possible to give the act effect according to its general purpose. It is not possible to give it such effect if the board of supervisors must entertain the demands of one who claims his genuine signature does not appear upon a petition. Either a demand that the signature be canceled must be acceded to without inquiry, or else the genuineness of the signature must be determined by evidence other than the face of the petition. It is to be said, however, that in requiring an affidavit of the genuineness of all signatures and in requiring the petitions to be posted the legislature has provided such safe-guards as were deemed expedient; that it is not evidence of an intent to permit the fact, sworn to in the affidavit, to be controverted before the board, but it is intented to prevent perjury from being committed.

The conclusions I have reached are not different in essentials from those stated by Mr. Justice HOOKER. For

the purposes of this case, it seems to me sufficient to say that it is the plain legal duty of the board of supervisors to examine the petitions and affidavits accompanying them to discover upon and from the face of the petitions and affidavits whether they contain the affirmative facts specified in the law. If they do, then they should ascertain how many qualified electors have prayed for submission of the question to a vote of the electors, and ascertain from what the statute makes the evidence of the fact the number of votes cast at the last general election. The result will be two numbers established by the evidence which the statute permits them to consider. If the smaller of them is at least one-third as large as the other, the duty to pass the resolution and to make the order required by the law is a clear legal duty. If the number of signatures to the petitions is less than one-third the number of ascertained votes, the duty is equally clear not to pass the statute resolution and order, but to enter the ascertained and determined facts upon their record. It is not to be supposed that with their duties thus plainly defined supervisors will in any case refuse to perform them. In the present case, the board having adjourned without taking any action, the writ of mandamus must issue directing the board to convene and act.

McALVAY, J. We agree with the foregoing opinion of Mr. Justice OSTRANDER, and add that in our opinion the statute should be construed that, when the board has performed its legal duty in the manner therein pointed out, its determination is final whether or not the question is submitted to an election.

BROOKE, J., concurred.