## BATTLE CREEK BREWING CO. *v.* BOARD OF SUPERVISORS OF CALHOUN COUNTY.

1. INTOXICATING LIQUORS—TIME—LOCAL-OPTION LAW—ELECTIONS —WORDS AND PHRASES—TWO YEARS—STATUTES.
    The interval of two years specified by Act No. 183, Pub. Acts 1899, amending 2 Comp. Laws, § 5420, as the time within which the question of prohibiting the liquor traffic shall not be resubmitted to a vote after an election determining the issue, was intended to mean political not calendar years, and an election held April 3, 1911, following a vote on local option April 5, 1909, was a valid election. HOOKER, J., dissenting.

2. SAME—MAJORITY—ILLEGAL BALLOTS.
    Only votes legally cast may be counted to determine the majority required to prohibit the liquor traffic in a county under the local-option law. HOOKER and MOORE, JJ., dissenting.

Certiorari to Calhoun; North, J. Submitted May 2, 1911. (Calendar No. 24,600.) Decided May 8, 1911.

Mandamus by the Battle Creek Brewing Company against the board of supervisors of Calhoun county to compel them to declare the adoption of local prohibition rescinded at an election. An order granting the writ is reviewed by respondent on writ of certiorari. Affirmed.

*Stewart & Sabin* and *Ira A. Beck*, for relator.

*Robert H. Kirschman*, Prosecuting Attorney (*Walter S. Powers*, of counsel), for respondent.

HOOKER, J. On April 5, 1909, a vote of the electors was taken under the provisions of the local-option law, and the board of supervisors thereafter declared, by resolution, that the liquor traffic should be prohibited in Calhoun county from and after May 1, 1909. The question was submitted again at the election held April 3, 1911, and on April 10th the board of supervisors met to canvass the returns, and declare the result. A committee of five tabulated the votes as shown by the inspector's reports, as follows:

"Total number of votes cast: 13,760. Yeas, 6,832. No, 6,857. Blank and rejected votes, 71."

The report of the committee was unanimously adopted, and the following resolution was passed:

" Resolved, that the vote on the question of county prohibition be and the same hereby are canvassed and determined by the board of supervisors to be as set forth in the foregoing tabulated statement of votes cast, and that the same be entered in full upon the journal of the proceedings of this board."

A resolution was thereupon offered that the resolution adopted April 13, 1909, be repealed. A vote was taken, and the resolution was declared lost, whereupon the board adjourned without day. The relator, a corporation, engaged in brewing at Battle Creek, filed in the circuit

court a petition for mandamus, praying that the board of supervisors be compelled to reconvene and pass a resolution repealing the resolution of April 13, 1909. The writ was granted, and the respondent has brought the proceeding to this court by certiorari. Several questions are raised which we find it unnecessary to discuss.

**Validity of Election.** The last election was held two days short of two years after the preceding election. It is contended that the presenting of petitions, order for an election, and the holding of the election were futile, because unauthorized by law. The law provides that such election shall be at the next annual township election after action by the board ordering the same. Act No. 183, Pub. Acts 1899, § 6. Section 9 of the same act contains the following:

" *Provided, however*, that such proposition having been once submitted and decided either way, by a majority of the votes of the qualified electors in any county in the State, voting thereon, the same shall not be again submitted in such county within a period of two years next thereafter, but may, at any time after the expiration of such period upon a like petition and action, be again submitted, and so on, at the expiration of not less than two years after such election."

Section 13 makes the resolution following the vote take effect on the next ensuing 1st of May. This language is in no way ambiguous. It does, however, if literally construed, have the effect of making it possible to reconsider a vote in two years in cases where the second election can be held on a day in April later than that on which the preceding election was held, while in other cases the reconsideration must be deferred practically three years. Ordinarily we should construe this to mean two calendar years, both because it is the ordinary understanding of the term and because 1 Comp. Laws, § 50, subd. 10, provides:

" In the construction of the statutes of this State, the following rules shall be observed, unless such construction would be inconsistent with the manifest intent of the leg-

islature: The word ' month ' shall be construed to mean a calendar month, and the word ' year ' a calendar year."

Moreover, a similar statute has been so construed in the case of *Keefer* v. *Board of Supervisors*, 109 Mich. 645 (67 N. W. 981):

" We construe these provisions to mean that the question shall not be again submitted to a vote of the people, after a former vote is taken, within two years. We do not think that action by the voters in preparing petitions, and presenting them to the board, or the order of the board calling an election, must wait the lapse of two years."

It follows that the election was void.

There is another reason why this writ should not issue. A former resolution being in force, it could only be repealed in obedience to an election properly held, where the result should show that the necessary majority had been obtained. Section 13 aforesaid provides that such resolution shall not be repealed—

"Unless a majority of the electors of the county, voting on such proposition, at a subsequent election duly held in accordance with the provisons of this act, shall have declared against the prohibition of the manufacture of liquor and of the traffic therein."

It is a significant fact that this provision is an amendment of section 13 of the original act of 1889 (Act No. 207), where the language was:

" When the result of the county canvass shall show that a majority of all the legal votes cast is in the affirmative of the proposition."

By this the legislature excludes the construction that only legal votes are to be counted to ascertain the required majority, and prescribes a majority of the votes of the qualified electors voting.

The law (2 Comp. Laws, §§ 5421, 5422) provides:

" (5421) Sec. 10. At the close of the canvass, and after declaring the result of the vote, and without recess or adjournment, the inspectors shall draw up a statement of

such result and cause a duplicate thereof to be made, which statement and duplicate, together with the poll lists, shall be certified by the inspectors to be correct, and shall be subscribed with their names. Such statement shall set forth in words at length the whole number of votes given upon the proposition submitted, and the whole number of votes cast 'yes' and the whole number of votes cast 'no' thereon, and the majority for or against the proposition. Said statements, together with the poll lists, shall forthwith be filed by the inspectors with the township or city clerk, one copy of each of which shall be filed and preserved in his office, and the other transmitted by him to the county clerk of the county within five days after such vote shall be taken, and there remain on file.

"(5422) SEC. 11. The board of supervisors of such county shall meet on the first Monday after such election to canvass the vote of the county, and shall ascertain, determine and declare the result thereof. At such meeting the county clerk shall lay before the board the statements of the votes of the several townships, wards and election districts filed with him, as above provided. Such canvass, determination, and declaration of the result, together with a tabular statement of all the votes cast, shall be entered in full upon the journal of their proceedings for that day, and the same shall be signed by the acting chairman and the clerk of the board: *Provided,* that if any such statement or poll list shall not be made, certified or returned, as provided in section 10 of this act, the board of supervisors may, at such meeting, send for the same and require the same to be certified and made, the same, and with like power and authority, as the board of county canvassers at general elections."

The evident design of these provisions is to make the acts of the board in canvassing and passing its subsequent resolution purely ministerial ones. From the returns it must compile the figures, and the majority for or against. Then it must determine the requisite majority to effect a change, and there is but one way to do this; *i. e.,* to consult the poll list, which the law requires the inspectors to return and the supervisors to send for if not returned. To what purpose are these provisions, if not for this? We must give effect to every provision of the statute if it can be consistently done, and we can conceive of no other use for

these poll lists, and such use is consistent with the amendment already alluded to, which would be meaningless if we are still to estimate effective majorities upon legal votes only, as was required by the section amended. The case of *Smith* v. *Board of County Com'rs*, 64 Minn. 16 (65 N. W. 956), is a case in point and well illustrates the reason for distinguishing cases based upon such statutes from cases like *Wightman* v. *Village of Tecumseh*, 157 Mich. 326 (122 N. W. 122).

We base our holding in this case upon what seems to us a clear intention that to change an established law by vote of the people, something more than a majority of legal votes actually cast should be required; and, while we do not go the length of saying that a majority of all voters voting at the election whether they voted on this proposition or not should be required, we think a majority of those shown by the poll list to have voted upon the question is required, and this majority cannot be lessened by the disposition the canvassers may make of their ballots. They may throw out a ballot, and defeat the voter's intention, but they cannot thereby lessen the majority requisite to a change of the law. In short, we consider:

(1) That the act of the supervisors is ministerial.

(2) They compute the votes as shown by the returns, and determine the majority for and against.

(3) They ascertain from the poll lists the requisite majority, and, if greater than the majority of votes cast as shown by the returns, they declare the measure lost; if smaller, they declare it carried, and follow it with the prescribed resolution.

The case of *Kern* v. *St. Clair Supervisors*, 160 Mich. 11 (124 N. W. 941), sustains these propositions. We have not before passed upon the crucial legal question of how the board shall determine the requisite majority, as it has not been raised. This record shows a necessary majority to be 6,881 votes. Neither faction's vote equaled that. Consequently the relator was not entitled to the order made in circuit court.

The order should be reversed and writ dismissed, with costs of both courts.

MOORE, J. I agree with Justice HOOKER as to the second proposition, but not as to the first.

BLAIR, J. The facts are sufficiently set forth in the opinion of Mr. Justice HOOKER. The principal questions involved—and the only ones requiring discussion, in my opinion—are:

(1) Did the court err in holding that the board of supervisors had legal warrant for fixing the day for election on the first Monday in April, 1911 ?

(2) Did the court err in holding that blank and rejected votes were not to be considered in determining "the whole number of votes given upon the proposition ?"

1. The local-option act of 1889 (2 Comp. Laws, § 5412 *et seq.*) provided for the calling by the clerk upon petition of a special meeting of the board of supervisors for the purpose of considering the calling of an election—

" And the day and date on which such election shall be held, which said day shall always be on a Monday and which date shall be not less than 40 nor more than 60 days from the date of such order and not on the day of any other general election in the county." 2 Comp. Laws, § 5417.

Section 5420 provides as follows:

" Upon the day and date so designated in the call of the board of supervisors, an election shall be held in every township, ward and election district in such county upon the proposition set forth and designated in such call. All persons entitled under the laws of this State to vote for governor shall be deemed qualified to vote at such election. The registration of the qualified electors, the hour for opening and closing the polls, the manner of voting, and of holding and conducting an election under this act, and the powers and duties of boards of registration, of inspectors of election, township boards and common councils, and all other officers, with reference to such election, shall be the same in every respect as in the case of a general election; and the laws of this State pertaining to the

registration and qualification of electors, the disposition of the ballots, the canvass of the votes, and declaring the result thereof at general elections shall be observed and enforced at every election held under this act, so far as the same shall be applicable: *Provided, however,* that such proposition having been once submitted and decided either way by a majority of the votes of the qualified electors in any county in this State, voting thereon, the same shall not be again submitted in such county within a period of two years next thereafter, but may, at any time after the expiration of such period, upon a like petition and action, be again submitted, and so on, at the expiration of not less than two years after every such election."

Various sections of this statute were amended by Act No. 183, Pub. Acts 1899, including, among other things, the time of holding the local-option election. Section 6 requires that the question of prohibition be—

"Submitted at the next general election for township officers in the several townships, villages and cities in the county * * * which said day of election shall always be at the time of the township meeting for the election of township officers."

Section 13 of the act of 1899 provides, among other things:

"Such resolution of prohibition shall take full effect in such county on the first day of May next following its adoption, and shall not be subject to repeal by the board of supervisors within two years next thereafter, after the expiration of which period the board may again on petition of one-third of all the qualified electors thereof, as shown by the poll lists or returns and canvass of the last preceding general election for State officers held in the county, by a majority vote of all the members elect act as in the first instance," etc.

The period of two years mentioned in the proviso to section 5420 is to be interpreted in connection with the amendments fixing the date of the election at the date of the general election for township officers, etc., and the law is to be construed as though the amendments were part of the original act. It was manifestly the intention of the legislature that the result of the election should not

be disturbed for two years; not that it should be final for two years at times and three years at other times, as the time between the first and third general elections might be two years or a day or two less than two years. I am therefore of the opinion that the two years referred to are political years, and not calendar years. *Inhabitants of Paris* v. *Inhabitants of Hiram*, 12 Mass. 261; *McNeely* v. *Commissioners of Morganton*, 125 N. C. 375 (34 S. E. 510). This question was not involved in *Keefer* v. *Hillsdale Board of Supervisors*, 109 Mich. 645 (67 N. W. 981), and the reasoning of the case tends to support rather than oppose my conclusion.

2. The board of supervisors made, and spread upon its records, a tabular statement of the votes cast, showing the number of votes yes to be 6,832; the number of votes no to be 6,857, the number of blank and rejected votes to be 71. The court correctly held that the blank and rejected votes could not be considered as votes upon the proposition, and that it was the duty of the board to determine the result upon the basis of the yea and nay vote returned to the board. *Wightman* v. *Village of Tecumseh*, 157 Mich. 326 (122 N. W. 122).

The order is affirmed.

OSTRANDER, C. J., and BIRD, McALVAY, BROOKE, and STONE, JJ., concurred with BLAIR, J.

MOORE, J. I agree with Justice BLAIR as to the first proposition, but do not as to the second.