WIGHTMAN v. VILLAGE OF TECUMSEH.

1. ELECTIONS—PUBLIC IMPROVEMENTS—MUNICIPAL CORPORATIONS.
   In a special election for the purpose of authorizing a bond is-
   sue to construct a sewer system, the ballot omitted to state
   the purpose of the vote as prescribed by the common coun-
   cil, although a notice of the purpose, time, and place of the
   election was published as ·required, and the resolution
   adopted fully complied with the law; it was *held* that the
   voters were not misled and the election was valid.

2. SAME—VOID BALLOTS.
   Votes at a special election to authorize a bond issue, which
   bear distinguishing marks, are invalid for any purpose and
   should not be counted in determining the two-thirds ma-
   jority.

3. MUNICIPAL CORPORATIONS—STATUTES—BONDS—TAXATION.
   Section 2873, 1 Comp. Laws, prescribing a limit of two per
   cent. of the assessed valuation for the amount to be raised
   in any one year for corporate purposes of villages, in excess
   of the amount otherwise authorized, applies only to the pur-
   poses expressed in such section and not to all taxes or loans
   mentioned in the statute.

Case made from Lenawee; Lockwood, J. Submitted
February 24, 1909. (Docket No. 126.) Decided July 6,
1909.

Bill by James W. Wightman against the village of
Tecumseh and others to enjoin the issuance of certain
bonds and the construction of a sewer. From a decree
dismissing the bill, complainant appeals. Affirmed.

*James W. Wightman* (*Westerman & Westerman,*
of counsel), *in pro. per.*

*Fred B. Wood* and *Bird & Sampson,* for defendants.

Complainant, a taxpayer and owner of real estate in
the defendant village, filed the bill of complaint in this

case to enjoin the village and the other defendants, its trustees, from constructing certain sewers, from issuing bonds for that purpose, and from entering into a contract for their construction. The case was heard upon pleadings and proofs taken in open court, and decree entered dismissing the bill. The proposition to raise $29,000 by the issue of bonds for the construction of the sewers was submitted to the vote of the electors of the village. All the proceedings until the day of election were regular and in accordance with the statute. The following form of the ballot was prescribed by the council:

" Shall a village loan of twenty-nine thousand dollars for sewer purposes be authorized ?"

By the mistake either of the clerk in copying the form of the ballots, or of the printer in printing them, the words "for sewer purposes" were omitted from the ballots, so that they read, " Shall a village loan of twenty-nine thousand dollars be authorized ?" The total number of legal votes cast was 506. Of these, 364 were for the loan and 142 against it. Fifty-five votes were rejected as illegal because of distinguishing marks. Of these, 32 were for the loan, and 23 against it. Upon receiving the return of the election, the council determined that the proposition was carried by the requisite two-thirds vote, and were making preparations to issue the bonds and make a contract when this bill was filed. It is conceded that the following notice was published for two weeks preceding the election in the two village newspapers, and posted in six of the most public places in the village:

" Notice is hereby given that a special village election will be held at the council building in the village of Tecumseh on the 23d day of September, A. D. 1907, the polls being open at 7 o'clock in the morning of that day, or as soon thereafter as may be, and kept open until 5 o'clock in the afternoon, for the purpose of determining whether a loan of twenty-nine thousand dollars on the faith and credit of said village for the purpose of constructing a sanitary sewer system therein, shall be authorized, in accordance

with the resolution adopted by the village council of said village at an adjourned meeting, held on the 4th day of September, A. D. 1907, of which the following is a true copy:

"'Resolved, That the proposition to raise the sum of twenty-nine thousand dollars, by loan on the faith and credit of this village, for the purpose of constructing a sanitary sewer system in said village, according to the plans and specifications prepared by Riggs & Sherman, and now on file in the office of the clerk of this village, be and the same hereby is submitted to the vote of the electors of this village at a special village election now and hereby called for that purpose, to be held at the council building in said village on the 23d day of September, A. D. 1907, at which election the vote shall be by ballot, the contents of which shall be as follows, viz.:

"'The ballot for those voting to authorize said loan to read as follows:

☐ Shall a village loan of twenty-nine thousand dollars for sewer purposes be authorized: Yes.

"'The ballot for those voting not to authorize said loan to read as follows:

☐ Shall a village loan of twenty-nine thousand dollars for sewer purposes be authorized: No.

"'That said village election be conducted in every respect in the manner provided by law for special elections, and that the village clerk is hereby directed to give notice of said election by having a copy of this resolution published in each the Tecumseh Herald and the Tecumseh News at least twice before said election, and by posting notices of said election, containing copies of this resolution, in six of the most public places in this village at least two weeks before the date of said election.'"

The election was a special one, and no other question was before the electors. Tecumseh is a village of about 2,500 inhabitants. The election was once postponed by the council at the verbal request of some of the electors, in order to give the electors further time for discussion and consideration. It was also shown that there was a very full discussion of the proposed loan preceding the election.

Three questions are presented:

(1) Is the election void because the ballots did not state the purpose for which the indebtedness was to be incurred?

(2) Did the proposition receive the necessary two-thirds vote of all the electors voting at said election?

(3) Did the amount proposed to be raised exceed the amount authorized by the statute to be raised upon the assessed valuation of the village exclusive of the taxes of the same year?

GRANT, J. (*after stating the facts*). 1. The proceedings of the council were regular. The resolution published distinctly stated the proposition upon which the voters were to cast their ballots. It was a special election. No other proposition was before the voters. It had been fully discussed in newspapers and by citizens. Every voter who went to the polls must have known that the sole proposition for him to vote upon was the authorization of a loan of $29,000 for sewer purposes. The voters did not see the ballots until election day and probably at the polling places when they went to vote. The ballot then placed in their hands informed them that in accordance with the resolution of the common council they were to vote for a loan of $29,000. The purpose for which that loan was to be made did not appear upon the ballots. It cannot be conceived that the words "for sewer purposes" would have given the voters any information other than that already possessed by them before going to the polls. That provision of the charter above quoted, requiring the ordinance or resolution of the council to distinctly state the purpose of the expenditure, was fully complied with. By mistake of someone the exact form of the ballot was not followed. There is no possibility or claim that any voter was misled or prejudiced by the mistake. The object of the above provision of the statute is to notify the voters of the proposition to be voted upon at the future specified time so that they may have ample time for consideration and discussion. The money to be received from the loan was for one purpose only, and could not be diverted to any other purpose. The omission of the words "for sewer purposes," from the ballot must,

under the circumstances, be held not to have vitiated the election.

*People* v. *Township Board of Woodhull*, 14 Mich. 28, is not in point here. The circumstances in that case are entirely different. The petition was held to be too general. It did not enable the court, by a statement of the specified purpose for which the advances were made, to judge whether they came within the provisions of the act. This disposed of the case. The court used the following language:

"The question voted upon goes back over the whole time from the beginning of the war, without any of the restrictions or limitations provided in the act, and would apply as well to moneys advanced for bounties to drafted men, and to the cases prohibited by the proviso, as to any others. It would cover any incidental expenses in going to the provost marshal's office and returning, and the time spent there in getting the rolls corrected, or any other incidental expenses as to bounties or advances for bounties. This vote affords, therefore, no evidence what the vote of the electors would have been upon the question really authorized to be submitted."

In the present case the statute of the State has been fully complied with by the common council, and there is no room for any uncertainty from the defect in the ballot. See, also, *Thomas* v. *Kent Circuit Judge*, 116 Mich. 106 (74 N. W. 381), and authorities cited in *Bauer* v. *Township Board of Denmark, post*, 395 (122 N. W. 121).

2. It would be unnecessary in this case to decide the other two questions, but as they may again arise, and are fully discussed, we will determine them. The proposition was carried by the required two-thirds vote of the legal votes cast. Complainant does not contend that the 55 votes were improperly rejected, but insists that the legal electors voted these ballots, and therefore they should be counted in estimating the two-thirds vote. In other words, he insists that these votes were valid for one purpose, but void for all others. The position is untenable. The statute

makes all such votes void.   A void vote is of no more effect than no vote.   The case is the same as it would be if only 506 electors had voted.

3. The statute contains six sections providing taxes for different purposes, and prescribing a limit of taxation in each case.   1 Comp. Laws, §§ 2852–2857, inclusive.   Section 2873 reads as follows:

" Should any greater amount be required in any year for the purchase of grounds for erecting public buildings or for other necessary corporate purposes than can be raised by the council under the foregoing provisions of this chapter, such amount may be raised by tax or loan, or partly by tax and partly by loan, if authorized by a two-thirds vote of the electors voting upon the question at any annual or special village election.   The amount that may be voted or raised in any year, under the provisions of this section, shall not exceed two per cent. of the assessed valuation of the property in the village as shown by the last preceding tax roll made therein."

The 2 per cent. limit in this section applies to the purpose provided in that section.   That limit had not been reached.   The 2 per cent. does not include all the taxes mentioned in the other sections.

The decree is affirmed.

BLAIR, C. J., MONTGOMERY, OSTRANDER, and HOOKER, JJ., concurred.