## WOODWARD v. CITY OF WAKEFIELD.

1. MUNICIPAL CORPORATIONS—OFFICER MAY NOT VOTE ON CONTRACT IN WHICH HE IS INTERESTED ALTHOUGH NO FRAUD INVOLVED.

   It is improper and illegal for a member of a municipal council to vote upon any question brought before the council in which he is personally interested, irrespective of whether there is actual fraud or whether the municipality is benefited.

2. SAME—CONTRACT WITH CITY IN WHICH MAYOR ACTED AS AGENT OF WIFE VOID.

   Where the mayor of a city acted as the agent of his wife in selling real estate to the city, and his vote thereon was necessary to complete the transaction, the contract was void under the provisions of the city charter prohibiting the making of any contract with the city in which any officer is interested, directly or indirectly.

3. SAME—HUSBAND LIVING WITH WIFE INDIRECTLY INTERESTED IN SALE OF HER PROPERTY TO CITY.

   Although the home is owned by the wife, it cannot be said that the husband is not indirectly interested in the profits from its sale to the city of which he is mayor, within the meaning of the city charter prohibiting any contract in which he is directly or indirectly interested, where they live together, have more or less of a community interest in property, and some of the proceeds of the sale were used to pay household bills.

Appeal from Gogebic; Driscoll (George O.), J. Submitted June 15, 1926. (Docket No. 87.) Decided October 7, 1926.

Municipal Corporations, 28 Cyc. pp. 337, 650, 652; 19 R. C. L. 897; 3 R. C. L. Supp. 983.

236—Mich.—27.

Bill by William E. Woodward and others against the city of Wakefield, Edythe B. Rummel, and Alvin Rummel to set aside a land contract. From a decree dismissing the bill, plaintiffs appeal. Reversed, and decree entered for plaintiffs.

*Charles M. Humphrey* (*William G. Cloon*, of counsel), for plaintiffs.

*Harry K. Bay*, City Attorney, for defendant city of Wakefield.

*William S. Baird*, for defendants Rummel.

BIRD, C. J.    Plaintiffs are residents and taxpayers of the city of Wakefield. Defendant Alvin B. Rummel was mayor of the city of Wakefield in 1924. His wife, Edythe B. Rummel, was the owner of certain real estate in the city adjacent to the community house owned by the city. She made an offer in writing to sell it to the city for $17,300. The offer was accepted by the council and voucher drawn for the down payment of $7,300.

Plaintiffs assert in their bill that the sale was void because it violated the following charter provision:

"No officer of the city shall be interested, directly or indirectly, in the profits of any contract, job work or services, other than official services to be performed for the city. Any contract made in violation of this provision shall be void."

Other provisions of the charter are:

"All legislative power and authority of the city shall be vested in and be exercised by the city commission, herein referred to as the commission, which shall consist of the mayor and four city commissioners, each of whom shall vote on all questions unless disqualified by interest or excused therefrom by vote of the other four members. The commission shall be judge of the election and qualifications of its own members and shall prescribe rules for its own proceedings, not in conflict with this charter."

"All sessions of the commission shall be public and shall be held at the city hall. Three members shall be required to constitute a quorum for the transaction of business, but the member or members present at a regular meeting may adjourn the same from day to day and may compel the attendance of absent members in such manner as shall be prescribed by rules or ordinance."

It appears that after the offer was made the commission considered it when all the members were present, but no action was taken thereon. At a later meeting, when only a bare quorum, including the mayor, was present, the offer was accepted and a voucher was ordered drawn for the down payment of $7,300. It appears that the mayor and his wife lived on the premises which were sold to the city, and they reserved the right to occupy the premises until the latter part of the year. The record shows that the premises were mortgaged for $6,000, and the mayor was the indorser of the notes secured by the mortgages. These notes were paid in part with the down payment of $7,300.

It appears the contract with the city to purchase the property was prepared by the mayor. It was not submitted to the city attorney as is usual with such papers. It further appears that the vote of the council was participated in by the mayor, and without his vote the contract could not have been made. The testimony of Mrs. Rummel shows that she understood her husband was acting for her. She testified that she left everything to him.

After hearing the parties, the trial court was impressed that the provisions of the charter had not been violated, and it appears that he was influenced largely by the fact that no fraud had been committed in the transaction, in that the premises were well worth what had been paid for them. Being of this view he denied relief and dismissed plaintiffs' bill.

If Mr. Rummel acted as agent for his wife, his duty to her and his duty as mayor of the city conflicted. In respect to the city, it was his duty to secure the premises as cheaply as possible.   In respect to his wife, it was his duty to secure as much for the premises as he could.   The law has sought to avoid this collision of private interests with official duty by pronouncing contracts made under such conditions void.

"It is universally recognized that it is improper and illegal for a member of a municipal council to vote upon any question brought before the council in which he is personally interested.   *   *   *   Statutes frequently prohibit a member of a municipal council from taking any part in any action in which he is personally interested, and if the statute is violated the action of the council may be avoided without regard to actual fraud or whether it was beneficial to the municipality." 19 R. C. L. p. 897.

This general doctrine has been approved by this court:   *Smith* v. *Hubbell,* 142 Mich. 637; *Ferle* v. *City of Lansing,* 189 Mich. 501 (L. R. A. 1917C, 1096) ; *People, ex rel. Plugger,* v. *Township Board of Overyssel,* 11 Mich. 222.

But it is argued that the city was in no way defrauded, and that the purchase was beneficial to the city.   This will not change the rule.   It is the policy of the law to keep municipal officials far enough removed from temptation as to insure the exercise of their unselfish interest in behalf of the municipality. 19 R. C. L. p. 897; *Ferle* v. *City of Lansing, supra.* The mayor was the agent of the city in such matters.   *People, ex rel. Plugger,* v. *Township Board of Overyssel, supra.*   His duty was to see that the property, if needed by the city, was purchased on the best terms consistent with its value.   When he became the agent of his wife in making the sale, was he in a position to do this?   As against his wife's interest was his mind in such an even position that

he could do this?    Anyone who knows of the selfishness of human nature and the sentiment of the family knows that he was in no position to do his duty by the city.

But it is said he received none of the profits of the contract.    It is useless to argue that when the wife sells her property at the top price, and thereby secures a good profit, that the husband does not indirectly profit by it.    They live in the same home and their property interests are more or less of a community interest.    In this case the testimony of the wife is rather convincing that she knew, and cared, little about her property affairs, but was willing to allow her husband to manage her business affairs, and dispose of the proceeds to liquidate household bills. With a trust of this character imposed on Mr. Rummel by the wife, could it be said he had no indirect interest in the profits of the contract?    The case of *Lewick* v. *Glazier*, 116 Mich. 493, is cited upon the question of relationship.    It was there held that because the son was the contemplated contractor for the erection of municipal waterworks, his father, who was on the council, was not disqualified to vote.    We think this case can be easily distinguished by calling attention to the difference in the money affairs of husband and wife, and the money affairs of father and son.    Aside from these considerations, the mayor was indirectly benefited by the discharge of his indorsements on the $6,000 notes, and the testimony shows that with the initial payment these notes, or a part of them at least, were paid.

We are impressed, in view of these considerations, that this action of the council in making this contract was void and should be set aside as prayed.    The plaintiffs will recover costs in both courts.

SHARPE, SNOW, STEERE, FELLOWS, WIEST, CLARK, and McDONALD, JJ., concurred.