Meixell, Appellant, *v.* Hellertown Borough Council.

Argued January 14, 1952. Before DREW, C. J., STERN, STEARNE, BELL, CHIDSEY and MUSMANNO, JJ.

*Philip J. Gahagan,* for appellant.

*Milton J. Goodman,* with him *Bernard V. O'Hare, Jr.,* for appellee.

OPINION BY MR. JUSTICE BELL, April 14, 1952:

The court below sustained defendant's preliminary objections to plaintiff's complaint in mandamus and dismissed the complaint. From this order plaintiff has appealed.

Where those present and validly voting are sufficient to constitute a quorum, does the vote of a majority of those ballots which have been validly cast, legally bind the Council?

The Borough Council of Hellertown, consisting of 9 members, met to elect a Burgess.* A Burgess receives a salary of $400 a year; a Councilman receives $10 for each regular monthly meeting he attends, a maximum of $120 a year. The only pertinent provision of the Act of July 10, 1947 (known as The Borough Code) P. L. 1621, §23, 53 P.S. 12891, provides as follows: "A majority of the entire membership of council shall constitute a quorum." Two of the 9 councilmen cast a questionable vote; each voted for himself for the office of Burgess. Each of these votes was undoubtedly illegal and void and therefore a nullity: *Genkinger v. New Castle*, 368 Pa. 547, 84 A. 2d 303; *Reckner v. School District*, 341 Pa. 375, 19 A. 2d 402; *Com. v. Raudenbush*, 249 Pa. 86, 94 A. 555; *Com. ex rel. McCreary v. Major*, 343 Pa. 355, 22 A. 2d 686. "*It is a well and wisely established principle of public policy in Pennsylvania that a public official may not use his official power to further his own interests . . . and a councilman is disqualified from voting in any matter or proceedings where he has a direct personal or pecuniary interest** . . .*": *Genkinger v. New Castle*, 368 Pa. supra; and his vote is void: *Com. v. Rauden-*

---

* A vacancy existed in this office because of the resignation of the former Burgess.

** Italics throughout, ours.

*bush,* 249 Pa. supra; *Reckner v. School District,* 341 Pa. supra.

In *Reckner v. School District,* 341 Pa. supra, this Court held that a Director of a Third Class School District may not legally vote in favor of a resolution of the Board increasing his own salary as secretary thereof, and if his vote is the deciding vote, the resolution fails. Speaking through Justice (now Chief Justice) DREW, we said: "In Commonwealth v. Raudenbush, 249 Pa. 86, this Court held that a councilman could not legally cast the deciding vote in favor of accepting his own resignation so that he might be employed by the city in a salaried position. It was there said: (pp. 88-89) 'We are of opinion that Raudenbush could not vote for the acceptance of his own resignation which, therefore, never became effective. In 28 Cyc. 337, citing numerous authorities to sustain the text, it is said: "There is a general rule of law that no member of a governing body shall vote on any question involving his . . . pecuniary interest, if that be immediate, particular, and distinct from the public interest." ['A member of a municipal council is disqualified from voting in proceedings involving his personal or pecuniary interest: 20 Am. & Eng. Ency. of Law (2d ed.) 1214.'] It is against public policy for a representative of a municipality to vote in its legislative body on any matter which affects him individually.' "

In *Com. ex rel. McCreary v. Major,* 343 Pa. supra, this Court went so far as to hold that unless authorized by statute, public policy prohibits the members of Council from using their official appointing power as Councilmen to appoint themselves members of the Board of the Authority even though each individual member who was appointed to the Board did not vote for his own appointment. Mr. Justice DREW said, inter alia, page 361, "A councilman cannot act for the mu-

nicipality and at the same time act for himself individually . . . He is a trustee for the municipality and he may not deal with himself in any matter which concerns it [citing numerous supporting authorities] . . ."

Since the vote of 2 councilmen was illegal and void, neither their vote nor their presence should be counted in computing a quorum or a majority. "Members having an interest are generally excluded in counting a quorum." McQuillen, Municipal Corporations, 3rd ed., vol. 4, Council Meeting, page 505; *City of Fort Wayne v. Lake Shore & M. S. Ry. Co.*, 132 Ind. 558, 32 N. E. 215; *Oconto County v. Hall*, 47 Wis. 208, 2 N. W. 291; *Woodward v. City of Wakefield*, 236 Mich. 417, 210 N. W. 322.

"Ballots which have been cast, but which on account of their marking or other reason cannot be counted as votes, should be excluded . . . and not be considered in determining whether the proposition has received the requisite majority . . ." 29 C. J. S. 352, §242.

"As a general rule, all the votes cast in the manner specified by law, by duly qualified voters, must be counted. The rule applies, in the absence of fraud or a valid statute to the contrary . . . . It does not apply, however, where the ballot or vote is for any reason invalid or void . . .": 29 C. J. S. 329, §227.

"The weight of authority adheres to the view that . . . blank and illegal ballots should be rejected in computing the number of votes." 18 Am. Jur. 342, §246.

That left 7 valid votes—more than a quorum. Of those 7 qualified and valid votes, 4 voted for Meixell for Burgess, 2 for Councilman Judd, and 1 for Councilman Abel. A quorum being present and legally voting, and Meixell having received a majority of all the legal votes cast, he was duly elected Burgess. This is consonant with every-day experience and common sense and is supported by decisions of this Court and by

leading text writers and authorities from many of the highest courts of our sister states: *Com. ex rel. Fortney v. Wozney,* 326 Pa. 494, 192 A. 648; *Commonwealth v. Fleming,* 23 Pa. Superior Ct. 404; 29 C. J. S. 329, §227; 352, §242; 18 Am. Jur. 342, §246; McQuillen, Municipal Corp., 3rd ed., vol. 4, p. 505; *City of Fort Wayne v. Lake Shore & M. S. Ry. Co.,* 132 Ind. 558, 32 N. E. 215; *Oconto County v. Hall,* 47 Wis. 208 2 N. W. 291; *Woodward v. City of Wakefield,* 236 Mich. 417, 210 N. W. 322; *State of Washington ex rel. Short v. Clausen,* 72 Wash. 409, 130 Pac. 479; *Murdoch v. Strange,* 99 Md. 89, 57 A. 628; *People ex rel. Beasley v. Sausalito,* 106 Cal. 500, 39 Pac. 937; *Hicks v. Krigbaum,* 13 Ariz. 237, 108 Pac. 482; *State ex rel. Hocknell v. Roper,* 47 Neb. 417, 66 N. W. 539; *Launtz v. People,* 113 Ill. 137; *Attorney-General v. Shepard,* 62 N. H. 383; *Rushville Gas Co. v. City of Rushville,* 121 Ind. 206, 6 A. L. R. 315; *State v. Green,* 37 Ohio State 227; *State v. Oeliesseline,* 1 McCord (S. C.) 52. No authority has been cited to support the contrary view.

Appellee contends that Meixell must receive a majority of the votes of the entire membership of Council or at least of a majority of those present at the meeting, including those whose votes were illegal. In other words, Meixell must receive 5 votes. No authority is cited to support this proposition, perhaps for the persuasive reason that if such a contention were to prevail, one or a relatively few persons could, by their intentional absence from, or by their presence at a meeting and their failure to vote, or their casting a blank or illegal ballot, block indefinitely an important election or important legislation and thus paralyze government with obviously great harm to the public interest. The principle or policy thus contended for by appellee is contrary to the prior decisions of this Court as well

as to many text authorities and authorities from our sister states. For example, in *Com. ex rel. Fortney v. Wozney*, 326 Pa. 494, 192 A. 648, a vacancy existed in a borough council composed of 7 members. Council held a special meeting on March 11th and elected appellant by a vote of 3 to 2. The election was held valid by this Court which, in its opinion, said: "The meeting of March 11th was attended by five of the regularly elected members of council. This constituted a quorum. At this meeting three of the five councilmen voted for appellant. This being a majority of the members present was sufficient for his election: Commonwealth v. Fleming, 23 Pa. Superior Ct. 404; Brackville Borough Council, 308 Pa. 579." This case is analogous on its facts and in principle controls and rules the present case.

*Commonwealth v. Fleming*, 23 Pa. Superior Ct. 404, is likewise analogous. The Borough Council of Rochester was composed of twelve members and under the code a majority constituted a quorum. At an adjourned meeting, at which 10 of the 12 council members were present, a motion was made to elect a member to fill a vacancy. The motion received 6 affirmative votes and no negative votes and consequently was carried. In the election, Moulds received 5 votes, Dowell 2 votes, and the other 3 councilmen abstained from voting. The Court held that Moulds received a majority vote; that he was duly elected to fill the vacancy; and that mandamus was the appropriate remedy for the relief prayed for. The Court, in its opinion, said, page 408: "A quorum being present, this was authorized to transact any business which might lawfully come before the body in the absence of special limitations or restrictions upon that power. It is a rule of the common law and generally of all parliamentary bodies that when a quorum is present the act of a majority of the quorum

is the act of the body: 2 Kent's Com. 293; Buell v. Buckingham, 16 Iowa 284; 2 Cook's Corp., sec. 713a; 1 Dillon on Municipal Corp., secs. 216, 217; United States v. Ballin, 144 U. S. 1 (12 Sup. Ct. Repr. 507)." This case is on its facts likewise analogous to the instant case.

"The decided weight of authority is to the effect that ballots improperly cast, or *rejected because of illegality* or unintelligibility, cannot be counted in determining the total vote cast . . . . Such ballots are simply nullities." *Washington ex rel. Short v. Clausen,* 72 Wash. 409, 130 Pac. 479.

In *Wightman v. Tecumseh,* 157 Mich. 326, 122 N. W. 122, where the question was whether a measure was carried by the necessary two-thirds vote, a similar contention to that made here by appellee was rejected by that court, which said, page 124: "[Complainant] insists that the legal electors voted these ballots [which were rejected], and therefore they should be counted in estimating the two-thirds vote. In other words, he insists that these votes were valid for one purpose, but void for all others. The position is untenable . . . . A *void vote is of no more effect than no vote.*"

*Derringe v. Donovan,* 308 Pa. 469, 162 A. 439, is clearly distinguishable. In that and subsequent cases, this Court held that a dead man could run for and be elected to public office and that votes for him were valid and should be counted. The obvious distinction is that in such a case the votes for the dead man were valid and hence countable, while in this case the votes by each of two councilmen for himself were illegal and void and hence uncountable.

This case involves the election of a public official. It is common knowledge that in a presidential, state or municipal election, in computing the total number of votes cast, or whether one candidate received a ma-

jority or a plurality, or in determining whether an amendment or a bond issue received a certain requisite percentage of the total vote, neither the illegal ballots nor the qualified non-voting electors are counted or included in such computation.

We deem it unnecessary to discuss any of the other contentions made by appellee.

The judgment of the court below is reversed and Althrope Meixell is declared to have been elected Burgess of Hellertown.

---

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

On June 18, 1951, the Borough Council of Hellertown, Northampton County, met to elect a successor to Myron D. Parons, the previous burgess whose resignation they had accepted at a meeting on June 4, 1951. Of the three candidates for office, Althrope Meixell received 4 votes; Victor J. Abel, 2 votes; and Raymond S. Judd, 3 votes. The latter two candidates were members of Council and each voted for himself.

The President of the Council ruled that no candidate having received a majority of the votes cast, the balloting was indecisive and another election was required.

On July 15, 1951 Meixell applied to the Court of Common Pleas of Northampton County for a writ of mandamus compelling the Borough Council to declare him the duly elected Burgess on the basis of the four votes received by him on June 18, 1951. The lower Court refused the writ and Meixell appealed to this Court.

It is the contention of the appellant that when Abel and Judd voted for themselves, they nullified their votes because of their personal interest in the result of the vote. Then, when Abel and Judd nullified their

votes because of their personal interest they also disqualified themselves as candidates. By disqualifying themselves as candidates they nullified the votes of the other councilmen who voted for them. This resulted, therefore, in a tally of only four legal votes, and since they were all cast for Meixell he, therefore, was elected.

It is by this Jacob's ladder of argument that appellant hopes to climb into the office of Burgess of Hellertown.

There is, of course, no doubt that a member of municipal council may not vote on any matter which involves his personal or pecuniary interest. The authorities on this subject were reviewed by Chief Justice DREW in *Commonwealth ex rel. McCreary v. Major,* 343 Pa. 355, 360, 22 A. 2d 686: "That there is 'a virtual unanimity of opinion' among all reasonable men that it is against public policy for a public official to appoint himself to another public office within his gift is beyond all question. Courts, not only of this Commonwealth, but of every other jurisdiction known to us, have uniformly held that personal interest of a public officer creates disqualification. In this connection, we said, in Commonwealth v. Raudenbush, 249 Pa. 86, 88-89: 'A member of a municipal council is disqualified from voting in proceedings involving his personal or pecuniary interest: 20 Am. & Eng. Ency. of Law (2d Ed.), 1214 . . . It is against public policy for a representative of a municipality to vote in its legislative body on any matter which affects him individually . . . . A councilman cannot act for the municipality and at the same time act for himself individually. He cannot serve two masters at the same time. He is a trustee for the municipality and he may not deal with himself in any matter which concerns it'."

In that case several members of the Borough Council of Beaver Falls were appointed by the Borough

Council to become members of the Board of Beaver Falls Municipal Authority, and the Court held that such appointment, for the reasons announced above, could not be validated.

It would be useless labor to pile up authority on the proposition that no public official may serve two masters at the same time but we find no decision that a member of municipal council may not be a candidate against rival candidates for burgess when there is a vacancy in that office. And certainly, in the absence of express statutory prohibition there is no reason why members of council may not choose one of their members, when a vacancy occurs, to the office of chief executive of the municipality. It could happen that a member of council would be, because of his experience on the council, the best qualified person to hold the office of chief executive of the municipality. In cities of the second class, the law not only permits but requires when a vacancy in the mayor's office occurs, that the president of council shall act as mayor until the vacancy is filled. (1901, March 7, P. L. 20, art. I; 1923, May 1, P. L. 112, No. 86)

The appellant Meixell goes further than arguing that the votes cast *by* Abel and Judd be not counted. He maintains that since they cannot be candidates, all votes cast *for them* were nullities. And then, since the only four good votes were delivered to him, he, in effect, was elected unanimously!

But to reach this conclusion, Meixell must dispose of the hard fact that nine members were present and voting, and that a majority of nine is five. Meixell, through his attorney, meets this problem by advancing the unique proposition that since five members lost their vote by voting for disqualified candidates they, therefore, did not vote at all. But he cannot make phantoms of these five councilmen, who, regardless of

the efficacy of their vote, were present for business and did vote.

Appellant's attorney quotes from Horr & Bemis on Municipal Ordinances, Sec. 43: "Those who are present and who help to make up the quorum are expected to vote on every question, and their presence alone is enough to make the vote decisive and binding, whether they actually vote or not.

"The objects of legislation cannot be defeated by the refusal of any one to vote, when present."

But this citation cannot help the appellant's argument since the council members in the case at bar *did vote*.

He also quotes from Chrostwaite Borough Laws, 1950 Edition, page 272: "A majority of the entire membership of council is necessary to form a quorum but when a quorum is formed, a majority of those voting on a question binds the quorum and the entire council, even though that majority does not equal those voting negatively plus those not voting at all." This quotation works to appellant's disadvantage rather than to his advantage. Not only was a majority of the council present at the meeting in question: the *whole* council was present—nine members. The majority of those voting, therefore, would be five. And that number voted *against* Meixell's candidacy, not for it.

The cases cited by appellant's counsel are either not apropos or definitely against his point of view. In the case of *Commonwealth v. Raudenbush,* 249 Pa. 86, 94 A. 555, the defendant member of the borough council tendered his resignation which was accepted by a vote of 8 to 7, the deciding vote being cast by the defendant himself. The Supreme Court held that the defendant could not vote for his own resignation, since as he was to be appointed by the council to become water superintendent of the borough, personal interest was in-

volved. Thus, disregarding his vote, he only received 7 out of 15 votes. But if his vote is counted as a vote not cast, the result is still 7 out of 14, and, therefore, not a majority of those voting.

The same holds true in the case of *Reckner v. German Township School District*, 341 Pa. 375, 19 A. 2d 402, also quoted by appellant's counsel. There the secretary of the school board voted with the majority to increase his own salary which motion was carried by a vote of 4 in favor of the increase (the deciding vote being that of the secretary) and 3 against the increase. The appellant lays stress on the quotation from the opinion in that case: "There was no ratification of the resolution because there was no resolution to ratify, for by disregarding Younkins' interested vote, the resolution did not secure the affirmative majority." Appellant argues that because the court there used the word 'disregarding' it considered the secretary's interested vote to be a nullity. But all the court there said was that the resolution did not secure the requisite majority, for disregarding Younkins' interested vote, the vote was then 3 to 3 which would not be a majority of 7 votes (if you included Younkins' vote as a "vote cast,") nor would it be a majority of 6 votes, if you did not count Younkins' vote as a "vote cast."

Appellant's counsel has cited a number of out-of-State decisions but in practically all instances they deal with ballots improperly cast or rejected because of illegality or unintelligibility.

The appellant, assuming that the five Abel and Judd votes were void, cites 29 C. J. S. 329, sec. 227, as authority in his favor: "As a general rule, all votes cast in the manner specified by law, by duly qualified voters, must be counted. The rule applies, in the absence of fraud or a valid statute to the contrary, notwithstanding any defect or irregularity in the ballot

on which the vote is recorded. It does not apply, however, where the ballot or vote is for any reason invalid or void." All the cases cited in support of that proposition were cases that dealt with either unintelligible ballots, blank ballots or illegal ballots. None of these cases stands for the ruling that where a person who has the right to cast a vote casts it for the wrong person his vote is declared a nullity.

If a voter casts his ballot for several offices, and his choice for one of the offices is declared invalid because of some error, this does not cancel his vote for the other offices. If the council members in this case had actually used a ballot, and other offices, in addition to burgess were to be filled, the ballots cast for Abel and Judd would be disregarded only insofar as they applied to Abel and Judd. They would be valid for all the other offices. In that situation there can be no doubt whatsoever that the councilmen casting those ballots would be counted as voting.

This same reasoning holds true with regard to votes cast for a deceased candidate. In *Derringe v. Donovan,* 308 Pa. 469, 162 A. 439, the appellant contended that votes cast for a dead candidate should be regarded as nullities, and that the election officers should return the number of votes cast only for the living candidates. This Court said: "It is absurd to hold that the 1921 voters who voted for Flannery, meant to 'throw their votes away,' or meant that their votes for Flannery would be ineffective for any purpose. . . . It could happen that candidates of the major political parties might die on or just before election day and if the ruling contended for by the appellant should be given legal force, a person who might be voted for by only a comparatively inconsequential number of voters would be invested with an important public trust. Such a rule of law would not facilitate the recognition of the popular will, but would make possible its nullification."

To declare the Abel and Judd votes nullities means that the plaintiff becomes invested with an important public trust not only by an inconsequential number of votes, but with the recorded fact that the majority of the votes cast were cast *against* him.

———

SUPPLEMENTAL OPINION BY MR. JUSTICE BELL, May 26, 1952:

Since this Court's decision reversing the judgment of the court below and declaring Meixell to have been elected Burgess, defendant has presented a petition stating that it has a just and complete defense to Meixell's complaint and an amended petition stating the nature of its defense and requesting leave to file an answer on the merits. This Court has power to enter a summary judgment in mandamus proceedings, but will do so only in clear cases. In view of the amended petition setting forth new facts which may constitute a valid defense, we amend our order to read as follows: "The judgment of the court below is reversed; the defendant is granted leave to file an answer within fifteen days of the date hereof, with leave to the plaintiff to file a reply thereto within fifteen days thereafter or to take such other proceedings as he may desire in accordance with the law".