## National Bank of Chester County and Trust Company v. East Whiteland Township

*Arthur R. Littleton* and *Francis X. Hope, Jr.*, for complainants.

*Ralph W. Kent*, for respondent.

*James E. O'Neill, Jr.*, for intervenors.

KURTZ, J., April 16, 1962.——By the terms of the East Whiteland Township Zoning Ordinance of 1953, the township is divided into six districts. One such is designated "A-Rural Residence District". The ordinance further specifies the uses permitted of land located within each district.

By section 301, it is provided that in an "A-Rural Residence District" land may be used for the purposes therein specified, one of which is set forth as follows:

"6. Mining, quarrying and or processing of natural resources obtained on the site when authorized by the Board of Township Supervisors upon recommendation of the Board of Adjustment after public hearing before such Board of Adjustment provided (1) that adequate guarantee be given to assure that all mining areas be maintained in safe condition; (2) that no area used for mining, quarrying and/or processing of natural resources shall be located less than one hundred (100) feet from any side or rear property line unless the written consent of the owner or owners of the abutting property is obtained and approval is obtained from the Board of Supervisors after public hearing; and (3) that suitable arrangements be made to assure that the operation or process is not obnoxious or offensive as defined in section 705."

In the fall of 1960, J. Alan Patterson as the owner of the legal title, and Rae Crowther and Jean Crowther, co-partners, trading as Valley Forge Stone Company, the owners of the equitable title under agreement of sale with Patterson, presented a petition to the board of adjustment seeking permission to operate a quarry on a tract containing 50.089 acres located on the northwest corner of the intersection of Morehall and Swedesford Roads in said township. This tract is situate in an A-rural residence district. Hearings were held on the petition by the board of adjustment, the first such being held December 12, 1960, and the last May 22,

1961. Testimony totaling upwards of 1000 pages was taken at those hearings.

Thereafter, on a date not shown by this record, the board of adjustment rendered a decision recommending to the board of supervisors that petitioner's application be refused. However, notwithstanding that recommendation, the board of supervisors, at a special meeting held December 26, 1961, adopted a resolution, the effect of which was to grant a permit to petitioners to conduct quarrying on the tract here in question under certain restrictions and regulations not here important.

On December 27, 1961, certain individuals, residents of the township in the vicininty of the land here in question, appealed to the board of adjustment from the action of the board of supervisors so taken. So far as we now know, that appeal is still pending. At least some of these same persons have been permitted to intervene in this action.

On January 2, 1962, without the posting or giving of notice either public or private, the supervisors adopted a second resolution. This one provided that the permit granted to Valley Forge Stone Company and the resolution which accompanied it, adopted December 26, 1961, be revoked and rescinded; and that the recommendation of the board of adjustment that permission to quarry on the tract here in question be refused, be accepted as submitted. Complaint has been made as to the legality of this latter resolution by the administrators of the J. Alan Patterson estate and by Rae Crowther, under the provisions of The Second Class Township Code approved May 1, 1933, P. L. 103, sec. 702, as last amended by the Act of June 19, 1961, P. L. 486, sec. 1. In its consideration, our inquiry is limited to the manner in which the resolution was passed and to procedural irregularity: Griffith v. McCandless Township, 366 Pa. 309 (1951) ; McArthur v. Mt. Lebanon Township, 402 Pa. 78 (1960) ; Wynnewood Civic

Association v. Lower Merion Township, 180 Pa. Superior Ct. 453 (1956); Alenovitz v. East Whiteland Township, 6 Chester 184 (1954).

On December 26, 1961, the board of supervisors was composed of Wiley, Calhoun and Mathews. The two first named voted for the adoption of the resolution of that date, while Mathews voted against it. On January 2, 1962, the board was composed of Calhoun, Mathews and Batik. Mathews and Batik voted in favor of the rescinding resolution, while Calhoun voted against it. Batik had been elected to replace Wiley at the municipal election held in November 1961, and took office as a supervisor at the organization meeting of the board held January 2, 1962, the same meeting at which the action here under attack was taken.

It is first asserted that Supervisor Batik was disqualified from voting on the resolution by reason of interest. If he was, legality is lacking, since his vote was required for its adoption; without it the vote would have been one to one.

A public officer is disqualified from voting in any matter or proceeding where he has a direct personal or pecuniary interest, and if he attempts to vote, his vote is void: Commonwealth v. Raudenbush, 249 Pa. 86 (1915); Reckner v. German Township School District, 341 Pa. 375 (1941); Commonwealth ex rel. McCreary v. Major, 343 Pa. 355 (1941); Genkinger v. New Castle, 368 Pa. 547 (1951); Meixell v. Hellertown Borough Council, 370 Pa. 420 (1952); Bristol Township Zoning Ordinance Appeal, 7 Bucks 51 (1957).

From the record it can be found that Batik lived in a community known as "Down East" in said township, and that his house was located approximately one-quarter of a mile southeast of the property concerning which this litigation has arisen. On January 2, 1961, he was a member of the Down East Property Owners Association, having been its first secretary from 1957

to 1958. He was co-director of the ad hoc committee in defense of the association's opposition to the quarry here involved, and has served on that committee throughout the hearings conducted before the board of adjustment. As a member of the association, he has paid dues to it and has also paid at least one special assessment for fees and costs incurred in connection with those proceedings conducted before the board of adjustment, upon the application of these complainants.

In his capacity as a member of the committee, Batik attended all hearings before the board of adjustment save one. At one such hearing held December 12, 1960, counsel appearing for the Down East Association asked for and obtained the board's permission to allow Batik to conduct a part of the cross-examination of two of the applicant's expert witnesses, after which Batik did cross-examine, in part, a blasting expert and a vibration engineer. At a later hearing, he participated in the cross-examination of one of the applicants.

Batik also testified before the board of adjustment. Most of his testimony was expert in character based upon his qualifications as an analytical chemist. However, he did testify that he lived in the area known as "Down East", and that his house was located approximately 400 feet from Swedesford Road. He said also that he had felt tremors which he believed were caused by explosions set off in the quarry of Valley Forge Stone Company, which is now being operated. Batik also joined with the other residents of Down East in signing a petition addressed to the board of adjustment requesting that the complainant's application for a permit to quarry be rejected.

The Down East Property Owners Association employed a real estate expert who appeared before the board of adjustment as a witness. He testified that in his opinion the operation of the quarry upon the tract here in question would have a depreciating effect upon

the value of the houses located in the Down East area, and that their values would be reduced from 10 per cent to 30 per cent depending upon the location of the house. This depreciation would be greater for those houses located closer to the quarry site and would become less as the distance between the quarry site and the house in question increased.

Batik was also a member of the East Whiteland Republican Committee, being a committeeman in the north precinct. On January 4, 1961, a letter was written by the secretary of that committee to the board of adjustment in which it was stated that the committee deplored the degradation of land and the depreciation of land values in the township by the continuation of quarrying. The letter further stated that the increase in the safety hazards to the residents of the township was equally dangerous to the welfare of the community, and it expressed the hope of the committee that on consideration of these facts the extension of quarrying in the township would be rejected. This letter was written with Batik's authorization and knowledge.

On the one hand, it is contended that this activity on the part of Batik demonstrated a direct personal and pecuniary interest as a supervisor in the adoption of the resolution of January 2, 1962. On the other, it is argued that his interest amounted to nothing more than the eliciting of information on the issue, the forming of an opinion on the relative merits and the seeking to have his views made public in the market place of ideas. This, we are told, is not impropriety; if it is, then no candidate for public office would be eligible to vote, after election, on any question which had been an issue during the campaign.

At the outset it should be noted that in all of the cases cited above, except Bristol Township, the disqualifying interest to which the court pointed was one which had a direct relation to the pecuniary return the

one disqualified would have received. For example, in Meixell v. Hellertown Borough Council, supra, those disqualified voted for themselves in an election for the salaried office of burgess, while in Reckner v. German Township School District, supra, a school director voted to increase his own salary as secretary of the board. In Commonwealth ex rel McCreary v. Major, supra, it was held that city councilmen could not vote themselves into office as salaried members of a board of authority, and in Genkinger v. New Castle, supra, a municipal pension plan was held to be invalid because the members of city council who voted for it would have been able to retire under its provisions at the expiration of their terms of office. This is the only type of interest, we are told, the direct pecuniary interest, which voids the vote of one who benefits. Such an interest, it is urged, cannot be found in this case.

In other jurisdictions, examples may be found where disqualification was decreed in cases where the interest was not so direct, nor of such a pecuniary nature as that referred to in the authorities cited above.

Thus, in Saks & Co. v. City of Beverly Hills, 107 Cal. App. 2d 260, 237 P. 2d 32 (1951), it was held that where two of the councilmen who voted to revoke a variance under the zoning ordinance had made pre-election promises that they would do so if elected, and where a third councilman so voting had not been present at the hearings thereon, there had not been a fair and impartial hearing before a fair and impartial tribunal as the law contemplated, and the attempt to revoke the variance was void.

So, too, in McNamara v. Borough of Saddle River, 60 N. J. Super. 367, 158 A. 2d 722 (1960), affirmed in 64 N. J. Super. 426, 166 A. 2d 391 (1960), it was held that an ordinance limiting the expansion of a school was invalid where one of the members of borough council who voted for it had lived in the vicinity of the

school in question, and had actively opposed it prior to becoming a councilman.

In some jurisdictions it has been held that a distinction exists in the application of the rule between those cases in which the municipal body is acting in a legislative capacity and those in which it is acting in an administrative or quasi-judicial capacity: See 133 A. L. R. 1260. It would seem that the courts of this State have not observed that distinction. The language of the Supreme Court in Meixell v. Hellertown Borough Council, supra, is indicative of that view. It was there said at page 423, quoting from Commonwealth ex rel. McCreary v. Major, supra:

" 'It is a well and wisely established principle of public policy in Pennsylvania that a public official may not use his official power to further his own interest . . . and a councilman is disqualified from voting in any matter or proceedings where he has a direct personal or pecuniary interest . . .' "

This language is all-embracing; it refers to "any matter or proceedings." This, it would seem, includes both legislative and administrative or quasi-judicial functions.

In Erie City v. Grant, 24 Pa. Superior Ct. 109 (1904), the adoption of an ordinance, authorizing the paving of a street, was under consideration. Although the court did not find a disqualifying interest to exist in that case, it did consider the question without making any distinction as to the class of function there involved. It said, beginning at page 112:

"The interest which disqualifies a member of councils to vote is a personal or private one, not such an interest as he has in common with *all* other citizens or owners of property, nor such as arises out of the power of the municipality to tax his property in any lawful manner . . . " (Italics supplied.)

Had the councilman whose conduct was there under

scrutiny possessed such an interest, the ordinance would have been declared invalid.

Even though it be admitted for purposes of argument that such a distinction exists under the law of this State, we are of the opinion that the resolution here under discussion was adopted in the furtherance of an administrative or quasi-judicial activity. It will be noted that under the terms of the zoning ordinance, quarrying is a permitted use in an A-rural residence district under the conditions set forth in section 301, sub-sec. 6, quoted above. The declaration that it is permitted under those conditions constitutes a legislative declaration. Thereafter, the supervisors are enjoined to administer the granting of permits for the conduct of that activity in accordance with the policy of the township as set forth in the ordinance itself. Surely, by no stretch of the imagination can it be said that this administration involves the adoption of legislation. Legislation has been said to be the prescribing of a general rule of conduct while a judicial act is one which imposes burdens or confers privileges in specific cases according to the findings of some person or body: West Jersey Traction Co. v. Board of Public Works, 56 N. J. L. 431, 29 Atl. 163 (1894). The test of determining whether an ordinance is "legislative" in character as distinguished from one which is "administrative" is whether it makes a law, or merely administers or executes a law already in existence: Kelly v. John, 162 Neb. 319, 75 N. W. 2d 713 (1956), 37 Am. Jur., Municipal Corporations, §210. The resolution of January 2, 1962 withdrew a privilege in this particular case. It did not undertake to rezone the land in question. It was quasi-judicial in character.

We, therefore, believe that Batik was disqualified from voting on the resolution by reason of his interest. He did possess an interest in the matter which was personal and private in nature. It was not such as

would exist in common with all other citizens or owners of property in the township. The home owners in the Down East area possessed a common interest, and Batik shared that interest with them. However, that interest is distinct and personal to the residents of that area. It is not sufficiently widespread to include all of the residents of the township. We. therefore, decide that for this reason the resolution here involved lacks legality.

Complainants next assert that the supervisors' action of January 2, 1962, was void for the additional reason that they received no prior notices of it and did not have an opportunity to be heard.

"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections": Mullane v. Central Hanover Bank and Trust Company, 339 U. S. 306, 314 (1949).

The requirement of procedural due process applies equally to proceedings before administrative tribunals as well as judicial bodies. An administrative body cannot subsequently reverse a prior order without giving notice to the party affected and affording him an opportunity to be heard: Armour Transportation Company v. Pennsylvania Public Utility Commission, 138 Pa. Superior Ct. 243 (1939); West Penn Power Company v. Pennsylvania Public Utility Commission, 174 Pa. Superior Ct. 123 (1953). In the case last cited it was held that the Utility Commission could not subsequently reverse a prior order fixing rates without giving notice to the utility affected and affording it an opportunity to be heard. Due process of law must be observed in cases involving applications for permits under zoning ordinances: Krinks' Appeal, 332 Pa. 236

(1938); 8 McQuillan, Municipal Corporations, (3rd ed. revised) §25.147.

The supervisors contend, however, that the complainants have no standing to complain concerning the lack of notice because they do not have a right to be heard. While it is admitted that one possessed of a vested property right is entitled to be heard, it is asserted that these complainants were not possessed of such a right. Schechter v. Zoning Board of Adjustment, 395 Pa. 310 (1959) is cited in support of that position.

We believe that the supervisors have failed to discern the distinction which exists between the requirement that notice and an opportunity for hearing be given, and the power to divest a property right after the giving of notice and affording an opportunity to be heard. In Schechter, a permit issued pursuant to a court-granted variance was revoked, *after notice*, until such time as the validity of the variance could be determined on appeal. The Supreme Court held that the property owner had not acquired a vested right under the permit through the expenditure of money in reliance upon it which prevented its revocation under any circumstances. In the instant case, it is not contended, as we understand this portion of complainants' argument, that the permit issued pursuant to the resolution of December 26, 1961, could not be revoked. Complainants merely assert that the action taken on January 2, 1961, was not legally taken because they had no notice of its intended consideration or an opportunity to be heard before its adoption. This is a manifestly different complaint from that considered under the "vested rights" decisions: See Herskovits v. Irwin, 299 Pa. 155 (1930).

But, say the supervisors, these complainants, indeed the whole world, had notice of the meeting of January 2, 1962, through the provisions of The Second Class Township Code May 1, 1933, P. L. 103, sec. 511, as

amended. It provides that the supervisors shall meet on the first Monday of January of each year, or, if it is a legal holiday, then on the first day following, for the purpose of organizing the board by electing a chairman and making the various appointments of officers therein specifically directed to be made.

It will be noted that section 511 pertains only to organizational meetings. Section 512 provides that the supervisors shall meet at least once each month at a time and place to be fixed by the board. The Act of June 21, 1957, P. L. 392, as amended, provides for the giving of public notice for all "public meetings." Such a meeting is declared to be: "That part of any meeting of a board during which it votes upon any ordinance, resolution [or] motion . . . dealing with . . . the fixing of personal or property rights, privileges, immunities, duties or obligations of any person or group of persons:" The notice required by the Act of 1957, supra, is designed to satisfy the requirements of procedural due process where personal or property rights are involved. The general notice given by section 511 of The Second Class Township Code, supra, is notice only that organizational matters will be undertaken at that meeting. Indeed, it could not be otherwise, for the newly organized board is a new entity. It could not give notice of its meeting dates until after its organization. No notice of regular meeting dates can be given until after the organizational meeting has been held. The old meeting dates of the former board cannot be binding upon the new board.

We, therefore, hold that no notice, either statutory or otherwise, was given of the meeting of January 2, 1962, at which the resolution here under attack was acted upon. Notice was necessary to satisfy the requirements of due process of law. Accordingly, for that additional reason, the resolution then adopted is of no legal effect.

Finally, complainants contend that because William D. Loucks and others, on December 27, 1961, appealed to the board of adjustment from the adoption by the supervisors of the resolution of December 26, 1961, the action attempted by the supervisors on January 2, 1962, was void since such action was stayed and could not legally be taken under the provisions of section 2007 of The Second Class Township Code of May 1, 1933, P. L. 103, as last amended by the Act of August 25, 1959, P. L. 753, sec. 1. That section provides for the taking of appeals to the board of adjustment by any person or township official aggrieved by any provision of the zoning ordinance or by any decision issued by any administrative officer charged with the enforcement of the provisions of the zoning ordinance. The effect of the taking of such an appeal is then set forth as follows:

"(e) An appeal shall stay all proceedings in furtherance of the action appealed from, unless the zoning officer certified to the board of adjustment, after the notice of appeal shall have been filed, that by reason of facts stated in the certificate a stay would in their opinion cause imminent peril to life and property. In such cases proceedings shall not be stayed otherwise than by a restraining order, which may be granted by the board of adjustment or by a court of record on application, on notice to the zoning officer and due cause shown."

It will be noted that, under this provision of the code, proceedings in furtherance of the action appealed from only are stayed. How can it be said that the resolution of January 2, 1962, repealing and rescinding the resolution of December 26, 1961, was in any sense a proceeding in furtherance of it? On the contrary, it would seem to us that the later action was in distinct opposition to the earlier.

An example of the application of a similar section of the Third Class City Code, Act of June 23, 1931, P. L. 932, sec. 4124, as amended, is found in Pittsburgh Outdoor Advertising Company v. Clairton, 390 Pa. 1 (1957). In that case it was held that after an appeal to the board of adjustment had been taken by one whose outdoor advertising signs had been ordered taken down by the city solicitor, the city could not sue the appellant for a penalty under another section of the zoning ordinance which provided that the continued maintenance of such signs would render their owner liable to the payment of the penalty. The attempt to collect the penalty was "in furtherance of" the action appealed from, i. e., the action ordering the removal of the signs.

No cases have been cited to us which sustain the complainants' position on this point. Our independent research has failed to disclose any. Accordingly, we hold that the appeal of William D. Loucks and others, on December 27, 1961, from the action of the supervisors taken December 26, 1961, did not constitute a stay of any further action by the supervisors in the nature of a resolution repealing or rescinding the action of December 26, 1961.

In our consideration of this matter, we have been cognizant of the rule which provides that the resolution here attacked is presumed to be valid and the burden of showing the contrary rests upon the one who so asserts: Whitpain Township v. Bodine, 372 Pa. 509 (1953); Boyle Appeal, 179 Pa. Superior Ct. 318 (1955). We believe that the complainants in this case have met that burden by clearly demonstrating first, that Supervisor Batik was rendered ineligible to vote by reason of his interest as hereinabove described, and that his vote was necessary to the adoption of the resolution here under consideration; and, second, that procedural due process was not observed in the adoption

of said resolution because necessary notice was not given prior to the meeting of January 2, 1962, nor were complainants afforded an opportunity to be heard. We believe that the resolution acted upon at that meeting has not been legally adopted. We therefore enter the following

*Order*

And now, April 16, 1962, the resolution of the board of supervisors of East Whiteland Township, Chester County, Pa., adopted January 2, 1962, revoking and rescinding the prior resolution of said board adopted December 26, 1961, granting a permit to Valley Forge Stone Company to quarry premises located in said township as therein described, is hereby declared to be without legal force and effect. The complaint made in this case as to its legality is hereby sustained. Each party to bear its own costs.